IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG A. BOWES, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | NO. 09-05784 |
| v. | : | |
| SOUTH WHITEHALL TOWNSHIP, et al., | : | |
| Defendants. | : | |

**OPINION AND ORDER**

**Slomsky, J.**                                                                                        August 12, 2010

**I.     INTRODUCTION**

Before the Court is a Motion to Dismiss (Doc. No. 8) filed by Defendants South Whitehall Township, Keith Zehner, Don S. Klein, Esquire, William H. Macnair, Glenn Block, Samuel E. Smith, and William H. Platt, II, Esquire (collectively "Township Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Township Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (Doc. No. 17). In addition, Plaintiffs have a pending motion to place the case in civil suspense (Doc. No. 19). On April 20, 2010, the Court held a hearing on these motions, which are now ripe for resolution. For reasons discussed below, the Court will grant Township Defendants' Motion to Dismiss, deny Township Defendants' Motion for Sanctions, and deny Plaintiffs' motion to place the case in civil suspense.

**II.    PROCEDURAL HISTORY**

On December 4, 2009, Plaintiffs, Craig A. Bowes and Elizabeth Feudale (husband and

wife), filed a civil Complaint (Doc. No. 1) against the Commonwealth of Pennsylvania;[1] South Whitehall Township; Keith Zehner, individually and in his capacity as Township Zoning Officer; Don S. Klein, Esquire, individually and in his capacity as Chairman of the Township Zoning Hearing Board ("ZHB"); William H. Macnair, individually and in his capacity as Vice Chairman of the ZHB; Glenn Block, individually and in his capacity as Secretary of the ZHB; William H. Platt, II, Esquire, individually and in his capacity as a member of the ZHB.

Plaintiffs' Complaint alleges violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Plaintiffs also allege Constitutional claims under 42 U.S.C. § 1983, including violations of the Fourteenth Amendment's Equal Protection Clause, the Fourteenth Amendment's Due Process Clause, and the First Amendment. Finally, Plaintiffs have asserted a civil conspiracy claim pursuant to 42 U.S.C. § 1983.

On January 15, 2010, Township Defendants filed the Motion to Dismiss (Doc. No. 8) now before this Court. In response, Plaintiffs filed a Motion to Strike (Doc. No. 9) the Motion to Dismiss. On February 12, 2010, Township Defendants filed a Response in Opposition (Doc. No. 10) to the Motion to Strike. The Court denied the Motion to Strike on March 24, 2010, and ordered Plaintiffs to file a Response to Township Defendants' Motion to Dismiss. (See Doc. No. 13.) On April 8, 2010, Township Defendants filed the Rule 11 Motion for Sanctions (Doc. No. 17), which is pending before the Court.

---

[1] On March 30, 2010, the Commonwealth filed a Motion to Dismiss (Doc. No. 15). During the April 20, 2010 hearing, Plaintiffs' Counsel withdrew Count One of the Complaint, which was the only Count naming the Commonwealth as a Defendant. Therefore, on April 21, 2010, the Commonwealth was dismissed from this case and its Motion to Dismiss was denied as moot. (See Doc. No. 23.)

On April 15, 2010, Plaintiffs filed a "Response to Defendants' Motions to Dismiss in the Nature of a Motion to Place the Within Action in Civil Suspense Pending the Outcome of the State Remedy Posited by Defendant Commonwealth of Pennsylvania." (Doc. No. 19.) This "Response" did not substantively address any of the arguments raised in Township Defendants' Motion to Dismiss. On April 20, 2010, the Court heard oral argument on the pending motions. At the conclusion of this hearing, the Court ordered Plaintiffs to file a substantive response to Township Defendants' Motion to Dismiss and Motion for Sanctions under Federal Rule of Civil Procedure 11. The Court also ordered Township Defendants to respond to Plaintiffs' motion to place the case in suspense. On April 27, 2010, Township Defendants filed their opposition (Doc. No. 24) to Plaintiffs' motion to place the case in civil suspense; and on April 28, 2010, Plaintiffs filed their substantive Memorandum of Law in Opposition (Doc. No. 25) to Township Defendants' Motion to Dismiss. Finally, on May 13, 2010, Township Defendants filed a Reply Brief (Doc. No. 30) in support of their Motion to Dismiss. Now that briefing on all issues is concluded, the Court will proceed with its disposition of the pending motions.

### III. FACTUAL BACKGROUND

Plaintiffs, Mr. Bowes and Ms. Feudale, are a married couple residing in South Whitehall Township, Pennsylvania. (Compl. ¶¶ 3-5.) Ms. Feudale is sensitive to and has been treated for the toxic effects of mold and mycotoxins, toxic encephalopathy, immune deregulation, mold sensitivity, food sensitivity, pollen sensitivity, vasculitis, autonomic nervous dysfunction, and cellular damage due to toxic exposures. (Id. at ¶ 10.) Due to these chemical sensitivities, even minute exposure to any number of substances can result in discomfort, incapacitation, or even life-threatening reactions. (Id. at ¶ 11.) Therefore, Ms. Feudale must spend virtually all of her

3

time in a highly sterile environment to maintain her health. (Id. at ¶¶ 10, 13.)

In March 2006, Plaintiffs purchased a home in South Whitehall Township because it is one of 2,100 homes in the country constructed with porcelainized steel. (Id. at ¶ 14.) Porcelainized steel does not absorb substances that may aggravate Ms. Feudale's condition. (Id.) However, Ms. Feudale's condition proved to be too severe for her to spend all of her time in the porcelainized steel house. (Id. at ¶ 15.) Therefore, upon the advice of Ms. Feudale's physician, Mr. Bowes purchased a prefabricated "bubble" structure, made entirely of galvanized steel and porcelain, to provide a safe haven for his wife. (Id. at ¶ 16.) This "bubble" was designed by Ms. Feudale's physician, Dr. William J. Rea, for the treatment of patients with her condition. (Id.)

In December 2006, Mr. Bowes installed the "bubble" on the property of Plaintiffs' home in South Whitehall. (Id.) Soon thereafter, acting upon an anonymous complaint, Defendant Zoning Officer Zehner inspected Plaintiffs' property. (Id. at ¶ 17.) According to the Complaint, on January 29, 2007, without conducting an adequate investigation, Zoning Officer Zehner sent an enforcement notice to Mr. Bowes, which described the "bubble" as a secondary "residential dwelling unit." (Id. at ¶¶ 18-19.)

In response to the enforcement notice, Mr. Bowes filed an appeal with the Township Zoning Hearing Board ("ZHB") and requested a variance from the applicable zoning regulations. (Id. at ¶ 20.) On May 10, 2007, the ZHB denied Mr. Bowes' appeal and his request for a variance based upon generalized concerns about Plaintiffs' property which, as alleged in the Complaint, were untrue and not properly documented. (Id. at ¶ 21-22.) Plaintiffs further allege that the ZHB was "not presented with any competent evidence that the 'bubble' presented a significant risk to the health and safety of Plaintiffs' neighbors." (Id. at ¶ 23.) Rather, the

4

Defendant members of the ZHB "simply stated that it was their 'opinion' that the use and enjoyment of adjoining properties would be adversely impacted by the 'bubble.'" (Id.) Ultimately, the Defendant members of the ZHB determined that they could not consider the physical hardship of a resident in determining whether to make an accommodation for the Plaintiffs' "bubble" structure through the variance process. (Id. at ¶ 24.) In addition, Plaintiffs' allege that Zoning Officer Zehner, during a November 24, 2008, public meeting before the ZHB, testified that he was "not sure what [the ADA] has to do with" his job as a Zoning Officer. (Pl.'s Mem. Opp. Def.'s Mot. Dismiss, Ex. A at 272:18-22.) Zehner went on to testify that the Municipalities Planning Code ("MPC") is the only law that he takes into consideration in his role as Zoning Officer and that he does not apply the ADA, the RA, or the Fair Housing Act to his administration of the MPC. (Id. at 273:14 – 274:25.)

On June 13, 2008, Defendant Township filed an action in the Lehigh County Court of Common Pleas (Doc. No. 2008-C-2880) seeking a mandatory injunction forcing Plaintiffs to remove the "bubble." (Compl., ¶ 28.) On October 1, 2008, the Honorable Carol K. McGinley of the Lehigh County Court of Common Pleas granted the Township's motion. (Id. at ¶ 29.) Plaintiffs appealed this decision. (Id. at ¶ 30.) On July 7, 2009, the Commonwealth Court affirmed Judge McGinley's decision. (Id. at 31.) Subsequently, Defendant Township moved to enforce the mandatory injunction and have the "bubble" removed. (Id. at 32.) Following these events, Plaintiffs sought relief by filing the present federal civil rights suit on December 4, 2009.

**IV.    TOWNSHIP DEFENDANTS' MOTION TO DISMISS**

   **A.    Standard of Review**

The motion to dismiss standard under Rule 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) articulated a two part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  See also Edwards v. A.H. Cornell & Son, Inc., No. 09-3198, 2010 WL 2521033, *2 (3d Cir. June 24, 2010).   First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaints' well-pleaded facts as true, but may disregard any legal conclusions."  Fowler, 578 F.3d at 210-11.  Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief."  Id. at 211.  In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Id. (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010).  This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw

on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

**B.     Discussion**

**1.     The Americans With Disabilities Act, The Rehabilitation Act, And The Statute of Limitations**

Plaintiffs allege that Township Defendants' refusal to grant a variance for the medically necessary "bubble" structure violates the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). According to Plaintiffs, this refusal effectively bars Plaintiffs from receiving the benefit of any services of the Township, because, without the "bubble," Plaintiffs are unable to live as husband and wife anywhere in the Township. (Compl. ¶¶ 24-27; Pl.'s Mem. Opp. Def.'s Mot. Dismiss, 12.) Township Defendants argue that Plaintiffs' ADA and RA claims should be dismissed for two reasons: (1) these claims are time-barred by the applicable statute of limitations; and (2) Plaintiffs have failed to identify any services, programs, or activities which they have been denied as a direct result of the Township's actions.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "This statement constitutes a general prohibition against discrimination by public entities, regardless of activity." New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 301 (3d Cir. 2007).

The RA similarly provides that:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

7

29 U.S.C. § 794(a).

The Third Circuit has explained that the ADA simply expanded the RA's prohibitions against discrimination into the private sector. New Directions, 490 F.3d at 302. Therefore, the Court's analysis of Plaintiff's claims under the ADA and the RA will be the same. Id. (noting that "'Congress has directed that the two acts' judicial and agency standards be harmonized' and we will accordingly analyze the two provisions together.").

Thus, to state a claim under Title II of the ADA, or Section 504 of the RA, a plaintiff must allege that:

> (1) he or she is a qualified individual with a disability within the meaning of the statute; (2) he or she is being excluded from participation in, or [is] being denied the benefits of the services, programs, or activities of a covered entity, or [is] otherwise being discriminated against by the entity; (3) such exclusion, denial of benefits, or discrimination is due to the plaintiff's disability.

Cornell Co. v. Borough of New Morgan, 512 F. Supp.2d 238, 262 (E.D. Pa. 2007); Chambers v. School Dist. Of Philadelphia, 587 F.3d 176, 189 (3d Cir. 2009) (noting that the same standards govern ADA and RA claims).[2] Additionally, "a plaintiff need not establish that there has been an intent to discriminate." Nathanson v. Medical College of Pa., 926 F.2d 1368, 1384 (3d Cir. 1991) (noting that "'[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect.'") (quoting Alexander v. Choate, 469 U.S. 287, 295 (1985)); James S. v. School Dist. of Philadelphia, 559 F. Supp. 2d 600, 621 (E.D. Pa. 2008).

---

[2] The RA requires the additional showing that the program or activity in question receives federal financial assistance. 29 U.S.C. § 794; Chambers, 587 F.3d at 189 n.20. However, there is no dispute that this element is met here.

Township Defendants contend that Plaintiffs' ADA and RA claims are barred by the applicable statute of limitations. Pennsylvania's two-year statute of limitations for personal injury claims applies to claims under Title II of the ADA and Section 504 of the RA. Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008). Generally, a statute of limitations begins to run from the moment the plaintiff has a "complete and present cause of action." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 195 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)).

Township Defendants submit that Plaintiffs' claims are untimely because Plaintiffs' ADA and RA claims accrued on May 10, 2007, when the ZHB denied Plaintiffs' appeal and request for a variance. Therefore, the statute of limitations ran on Plaintiffs' ADA and RA claims on May 10, 2009 – seven (7) months prior to the filing of this law suit. As an initial matter, the Court agrees with this contention.

Viewing the factual allegations in the light most favorable to Plaintiffs, as of the date of the ZHB's denial of Plaintiffs' request for a variance, Ms. Feudale was a "qualified individual," she was "being excluded from participation in, or [] being denied the benefits of the services, programs, or activities of a covered entity, or [] otherwise being discriminated against by the entity," and the discrimination was due to Ms. Feudale's disability. See Cornell, 512 F. Supp.2d at 262. Accordingly, Plaintiffs were on notice that they had a complete and present cause of action under the ADA and the RA as of May 10, 2007. However, despite being represented by counsel and filing appeals with the ZHB and a Fair Housing Act complaint with the Department of Housing and Urban Development in August 2007, Plaintiffs never asserted claims under the ADA or the RA until December 2009, when they filed this case – seven (7) months beyond the

9

statute of limitations period.  (See Def.'s Mot. Dismiss, 9.)  These claims are therefore time barred.

Because Plaintiffs' ADA and RA claims are barred by the statute of limitations, no further discussion is needed regarding Township Defendants' alternative argument for dismissal of these claims.  Accordingly, Township Defendants' Motion to Dismiss Plaintiffs' ADA and RA claims will be granted.

### 2. Fourteenth Amendment: Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV.  The Third Circuit has outlined a two-step inquiry a Court must undertake in "reviewing an equal protection challenge to a zoning ordinance."  Melrose v. City of Pittsburgh, No. 08-4425, 2010 WL 2814284, *11 (3d Cir. July 20, 2010); Congregation Kol Ami v. Abington Township, 309 F.3d 120, 136-37 (3d Cir. 2002).  First, Plaintiffs must show that they are "'similarly situated' to an entity that is being treated differently."[3]  Melrose, 2010 WL 2814284, at *11 (quoting Congregation Kol Ami, 309 F.3d at 137).  Only after Plaintiffs have met this burden must the

---

[3] Courts allow individuals to bring equal protection claims based on a "class of one" theory, rather than as members of a traditionally recognized protected class.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (*per curiam*); Highway Materials, Inc. v. Whitemarsh Twp., 2010 WL 2680996, *6-7 (3d Cir. July 7, 2010); see also Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 366-67 (2001) (noting that disability does not form the basis for a protected class).  When a claim is based on a "class of one" theory, a plaintiff must demonstrate that he has been intentionally treated differently from others similarly situated.  See Highway Materials, Inc., 2010 WL 2680996, at *7.  Here, since Plaintiffs are not members of a protected class, they bring their equal protection challenge as a "class of one."

local municipality offer a justification for its ordinance. Id. (citing Congregation Kol Ami, 309 F.3d at 137). Furthermore, the municipality's justification is only subject to rational basis review where, as here, the alleged disparate treatment is based on disability. Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001); Highway Materials, Inc., 2010 WL 2680996, at *7. In other words, a classification based on disability "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Garrett, 531 U.S. at 367 (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)). Additionally, the municipality need not have "articulat[ed] its reasoning at the moment [the] particular decision [was] made. Rather, the burden is upon the [Plaintiffs] to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id. (quoting Heller, 509 U.S. at 320, and FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)).

Here, Plaintiffs have merely submitted a conclusory allegation that they were treated "in a manner different from other, similarly situated, residents." (Compl. ¶ 47.) Plaintiffs have offered no factual allegations regarding other similarly situated residents who have been treated differently.[4] As already noted, under the pleading standard announced in Iqbal, Plaintiffs must do more than allege an entitlement to relief; Plaintiffs must show an entitlement to such relief with facts. Iqbal, 129 S Ct. at 1950. Threadbare, conclusory allegations like those alleged in

---

[4] In fact, Plaintiffs' Response to the Motion to Dismiss specifically states that they "believe that discovery will demonstrate that they have been treated in a manner different from similarly situated individuals." (Pl.'s Resp. Opp. Mot. Dismiss, 14.) This statement evinces a mere "belief" that Plaintiffs may discover evidence of an equal protection violation. However, supposition is not enough to state a plausible claim for relief. Rather, Plaintiffs' claims must be grounded in factual allegations.

Plaintiffs' equal protection claim are simply not sufficient.  See id. at 1949.  Accordingly, Township Defendants' Motion to Dismiss Plaintiffs' equal protection claim will be granted.

### 3. Fourteenth Amendment: Due Process

#### *i. Procedural Due Process*

In the Third Circuit, to allege a cause of action for a violation of procedural due process, a plaintiff must show that (1) a person acting under color of state law deprived him of a protected property interest, and (2) the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process.  DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003).  In considering whether Plaintiff has been deprived of due process, the Court must determine "what process the State provided, and whether it was constitutionally adequate."  Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 138 (3d Cir. 2010) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)).

When a state provides "reasonable remedies to rectify a legal error by a local administrative body," it provides constitutionally adequate procedural due process. DeBlasio, 53 F.3d at 597.  As further explained in DeBlasio, "when a state 'affords a full judicial mechanism with which to challenge the administrative decision' in question, the state provides adequate due process . . . whether or not the plaintiff avails [himself] of the provided appeal mechanism."  Id. (quoting Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir. 1988)).  Moreover, the Third Circuit has recognized that procedures for challenging zoning ordinances under Pennsylvania law conform with the Constitution's due process guarantee.  Bello, 840 F.2d at 1128.

Even if, as Plaintiffs allege, the Zoning Officer and Zoning Hearing Board failed to apply

12

the ADA and the RA to Plaintiffs' requests for a variance, such an argument does not demonstrate a failure to provide adequate procedural due process. Allegations that the Township did not apply or follow federal or state substantive law are immaterial to a procedural due process claim. See Maple Properties, Inc. v. Twp. of Upper Providence, 151 Fed. App'x 174, 179 (3d Cir. 2005) (quoting Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 468-69 (7th Cir. 1988)).

Pennsylvania provides adequate procedural due process by affording Plaintiffs a full judicial mechanism through which to challenge the Township's zoning decisions. See DeBlasio, 53 F.3d at 597. Plaintiffs used this process to appeal the zoning decision and to apply for a variance. That Plaintiffs never pursued further appeals through the state courts is of no import. See DeBlasio, 53 F.3d at 597. Plaintiffs have "offered no evidence that [they] sought or [were] denied recourse to state courts to pursue these claims." Maple Properties, 151 Fed. App'x at 179. The process was at all times available to them; it was their choice not to avail themselves of it. Accordingly, Township Defendants' Motion to Dismiss Plaintiffs' procedural due process claim will be granted.

### ii. *Substantive Due Process*

Plaintiffs' substantive due process claim similarly is not persuasive. To properly plead a substantive due process claim, in the context of a land-use dispute, Plaintiffs must allege (1) a property interest protected by the Fourteenth Amendment, and (2) deprivation of that interest by conduct of local officials' that shocks the conscience. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

The shocks the conscience test is satisfied only by the most "egregious" official conduct.

Highway Materials, 2010 WL 2680996, at *4; Eichenlaub v. Township of Indiana, 385 F.3d 274, 285 (3d Cir. 2004). Whether the conduct complained of "shocks the conscience" will depend on the facts of the case. United Artists, 316 F.3d at 399-400 ("the meaning of [the shocks the conscience] standard varies depending on the factual context"). However, it is clear that federal courts employ this test to avoid converting federal courts into super zoning boards of appeals. Highway Materials, 2010 WL 2680996, at *4; United Artists, 316 F.3d at 402. In the "vast majority" of land-use and zoning cases, "local and state agencies and courts are closer to the situation and better equipped to provide relief." Highway Materials, 2010 WL 2680996, at *4 (quoting Clark v. Boscher, 514 F.3d 107, 113 (1st Cir. 2008)).

In Eichenlaub, the Third Circuit analyzed the "shocks the conscience" standard in the context of a land-use dispute. 385 F.3d at 286. There, the plaintiffs asserted that:

> [Z]oning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs.

Id. There was no allegation of corruption or self-dealing, and "the local officials were not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group." Id. Reiterating its reasoning in United Artists, the Third Circuit noted that:

> [E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "it is not enough simply to give these state law claims constitutional labels . . . in order to raise a substantial federal question under section 1983."

Id.

In sum, official conduct shocks the conscience only where the conduct is the product of "corruption or self-dealing, bias against an ethnic group, interference with constitutionally-protected activity or a virtual 'taking' of property." Good v. Trish, 2007 WL 2702924, *6 (M.D. Pa. Sept. 13, 2007) (quoting Prosperi v. Twp. of Scott, 2006 WL 2583754, *4 (W.D. Pa. Sept. 7, 2006). None of Plaintiffs' allegations demonstrate any of the above-referenced forms of conscience-shocking conduct. At most, Plaintiffs allege that township officials failed to appropriately apply federal anti-discrimination statutes (i.e., the ADA and the RA). As explained above, a mere violation of law does not satisfy the shocks the conscious standard.

Plaintiffs have simply dressed a common land-use claim in constitutional trappings. However, the Constitution does not cover the zoning dispute described in this case. Therefore, Township Defendants' Motion to Dismiss Plaintiffs' substantive due process claim will be granted.

### 4. First Amendment: Freedom of Speech, Freedom to Petition, and Freedom of Association

The crux of Plaintiffs' First Amendment claim is that their right to freedom of association has been denied by Township Defendants' "refusal to reasonably accommodate Ms. Feudale's disability." (Pl.'s Resp. Opp. Def.'s Mot. Dismiss, 16.)[5] The First Amendment has been

---

[5] Plaintiffs' Complaint also attempts to assert claims for violations of their First Amendment rights to freedom of speech and freedom to petition. (Compl. ¶ 55.) However, Plaintiffs have failed to plead any factual allegations to state valid claims for violations of either of these First Amendment protections. Notably, Plaintiffs' Response in Opposition to the Motion to Dismiss states:

> [T]o the extent that the Township's recalcitrance is a result of the actions which Plaintiff Bowes has engaged in to pursue his and his

15

interpreted to encompass "choices by the individual 'to enter into and maintain certain intimate human relationships." Doe v. City of Butler, 892 F.2d 315, 322-23 (3d Cir. 1989) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 617 (1984)). This has become known as the right to freedom of association.

In Doe v. City of Butler, the Third Circuit upheld a zoning ordinance that was attacked for violating the plaintiffs' right to freedom of association. 892 F.2d at 322. There, the plaintiffs challenged a city ordinance limiting the number of residents in transitional dwellings (e.g., shelters for abused women) to a maximum of six (6). Id. The Plaintiffs alleged that:

> [B]ecause it is not programmatically or economically feasible to operate a shelter for abused women and their children if it is restricted to a total of six residents, the residency limit adversely affects their right to live in a dwelling with other battered women through which they could get sustenance from each other and counseling for all.

Id.

The Third Circuit disagreed with the plaintiffs' contentions in Doe v. City of Butler, finding that:

> The zoning occupancy limitation challenged here does nothing to

---

> wife's federal rights, the Speech and Petition Clauses of the First Amendment are also implicated. Prior to discovery, Plaintiffs are unable to gauge such motivations.

(Pl.'s Resp. Opp. Def.'s Mot. Dismiss, 16.) This statement demonstrates Plaintiffs' lack of any factual basis for their freedom of speech and petition claims. It appears that Plaintiffs have attempted to file a "kitchen sink" First Amendment claim, without any supporting factual allegations. Neither the Federal Rules of Civil Procedure, nor federal case law, countenance such meager pleadings. See Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."); Iqbal, 129 S Ct. at 1950 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'").

> prevent plaintiffs from associating with each other, and with others similarly situated. It merely provides that for zoning purposes, a reasonable occupancy limit must be observed.... We must, therefore, reject plaintiffs' freedom of association claim.

Id. at 323.

In the case here, Plaintiffs similarly challenge a zoning ordinance that does nothing to prevent Plaintiffs from associating with each other. The Court is sympathetic to Plaintiffs' plight. Ms. Feudale has a serious medical condition which places significant restrictions on the types of environments in which she can live. However, the Township's zoning ordinance places no limits on Plaintiffs' freedom of association. The ordinance does not place any restrictions on the number or type of persons who may occupy the Plaintiffs' home or property, like the arguably more restrictive provision that was upheld in Doe v. City of Butler, 892 F.2d 315. Rather, the ordinance at issue only applies to the structure and placement of a second dwelling unit on Plaintiffs' property. As Township Defendants note, the ordinance "is a typical land use restriction defining the type of structure that can occupy a residential lot." (Def.'s Reply Brief In Supp. Mot. Dismiss, 20.) Once again, Plaintiffs have attempted to dress a zoning dispute in a constitutional claim that simply does not fit.

Unfortunately, Plaintiffs undertook their installation of the "bubble" structure without first notifying the Township, researching the applicable ordinances, or applying for the necessary permits. If Plaintiffs had not acted in this manner, they likely would have saved themselves and the Township considerable time and expense. Although the Court empathizes with the Plaintiffs' situation, their actions – not the actions of the Township and the pertinent zoning ordinance – have caused the loss. Accordingly, Township Defendants' Motion to Dismiss Plaintiffs' First

Amendment claim will be granted.

### 5. 42 U.S.C. § 1983 Civil Conspiracy

To state a Section 1983 civil conspiracy claim, Plaintiffs must allege that "two or more conspirators reached an agreement to deprive [Plaintiffs] of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other grounds by United Artists, 316 F.3d 392. Thus, as in all Section 1983 claims, a plaintiff must allege that the defendant deprived him of a constitutional right while acting under color of state law. As explained above, Plaintiffs have failed to adequately plead any constitutional violations. Therefore, Plaintiffs' Section 1983 conspiracy claim must also fail. Teed v. Hilltown Twp, 2004 WL 1149486, at *4 n.5 (E.D. Pa. May 20, 2004) ("There is no cause of action for conspiracy under § 1983 in the absence of an underlying substantive due process claim or other constitutional violation."); Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F. Supp.2d 803, 843 (E.D. Pa. 1998) (noting that an actual denial of a civil right is necessary before a cause of action for conspiracy arises). Consequently, Township Defendants' Motion to Dismiss Plaintiffs' Section 1983 civil conspiracy claim will be granted.

### 6. Abstention & Immunity

Township Defendants have raised issues of abstention under Younger v. Harris, 401 U.S. 37 (1971), and the *Rooker-Feldman* doctrine. These two abstention doctrines generally permit a federal district court to abstain from jurisdiction over cases that involve ongoing state court proceedings (*Younger* abstention), or cases in which relief from the federal court would effectively reverse a state court decision or void a state court ruling (*Rooker-Feldman*

abstention). See Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005); Taliafero v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006). However, because the Court will grant Township Defendants' Motion to Dismiss, thereby dismissing Plaintiffs' Complaint in its entirety, the Court need not address Township Defendants' abstention arguments.

The individual Defendants have also raised the aegis of qualified immunity and judicial immunity. However, having found that Plaintiffs failed to plead any underlying constitutional violations, the Court need not address these immunity issues. See Speck v. City of Philadelphia, 2008 WL 115005 (E.D. Pa. Jan. 10, 2008).

## V. PLAINTIFFS' MOTION TO PLACE THE CASE IN CIVIL SUSPENSE

The Court's analysis of Township Defendants' Motion to Dismiss compels the ultimate conclusion that Plaintiffs have failed to adequately allege any claims upon which relief may be granted. For this reason, the Court will dismiss Plaintiffs' Complaint in its entirety. Accordingly, Plaintiffs' Motion seeking to place this case in civil suspense while they attempt to seek a special exception under the Pennsylvania Municipalities Code, 53 P.S. § 10912.1, will be denied as moot.

## VI. TOWNSHIP DEFENDANTS' RULE 11 MOTION FOR SANCTIONS

On April 8, 2010, Township Defendants filed a Motion for Sanctions, pursuant to Federal Rule of Civil Procedure 11. (Doc. No. 17.) Township Defendants assert that Plaintiffs' claims are "frivolous and without factual or legal support." (Def.'s Mot. Sanctions, 4.) The Court notes that Township Defendants did not attach a memorandum of law to this Motion for Sanctions, nor did their Motion cite any legal authority for the issuance of sanctions against

19

Plaintiff. See Local Rule 7.1 ("Every motion ... shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion.").

"The main objective of [Rule 11 sanctions] is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 534 (1991). Although the Court will grant Township Defendants' Motion to Dismiss the Complaint, the Court does not find that Plaintiffs' Complaint was baseless or abusive. Therefore, Township Defendants' Motion for Sanctions will be denied.

## VII. CONCLUSION

For the foregoing reasons, Township Defendants' Motion to Dismiss will be granted, Plaintiffs' Complaint will be dismissed in its entirety, and Township Defendants' Rule 11 Motion for Sanctions will be denied. Plaintiffs' Motion to place the case in civil suspense will be denied as moot, in light of this Opinion dismissing Plaintiffs' Complaint. An appropriate order follows.